[L. A. No. 13835. In Bank.—December 29, 1933.]

In the Matter of the Estate of ELIZABETH D. PUTNAM, etc., Deceased.

Feemster, Perkins & McCormick for Appellant.

Farnsworth, Burke & Maddox, J. A. Chase and James K. Abercrombie for Respondents.

THOMPSON, J.—The contest here is between the daughter of decedent's predeceased husband and the surviving husband and other heirs of deceased. It centers around the question of whether section 229 of the Probate Code, which

provides: "If the decedent leaves no issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, such property goes in equal shares to the children of the deceased spouse and to their descendants by representation . . . " controls the distribution of a part of the estate. The appeal from the decree of distribution is before us upon the judgment-roll alone. Hence we may set down the following facts found by the court below: Elizabeth D. Putnam died intestate on August 18, 1931, and left surviving her, her husband, two brothers, a sister and several nephews and nieces, children of a predeceased sister, all of whom are the respondents herein. The decedent had previously been married to Timothy Halstead, who died intestate October 18, 1886, leaving as his heirs, his widow, their daughter, Lena May Halstead, and the appellant here, Arzena Halstead, his daughter by a former wife. His estate was distributed to the three in equal shares and subsequently partitioned among them by a decree of partition. On April 23, 1907, decedent married J. F. Putnam and they lived together to the time of her death. Prior to her death she sold certain parcels of the inherited property, her husband J. F. Putnam joining in the conveyance, and with practically all of the proceeds purchased 918 shares of the capital stock of the Southern California Edison Company. The purchase agreement was signed by Elizabeth D. and J. F. Putnam, which agreement provided that the stock was to be issued to them as joint tenants with the right of survivorship. Three certificates of stock representing the 918 shares were issued in the name of Elizabeth D. Putnam and J. F. Putnam as joint tenants with full rights of survivorship on November 19, 1928. For two years and two months the stock stood in their joint names and quarterly dividends were paid by company checks drawn to both of them as joint tenants. However, on January 30, 1931, the certificates were signed by Elizabeth D. Putnam and J. F. Putnam to Elizabeth D. Putnam, and on February 7, 1931, ten certificates of stock, totaling 918 shares, were issued to Elizabeth D. Putnam. It is these shares of stock which are involved in the present appeal, no question being raised with regard to any other property. The probate court distributed the shares of stock to the sur-

viving husband, sister, brothers and nephews and nieces of decedent.

We have already indicated the principal contention. However, in support of the action of the probate court, respondents suggest that the law of succession in effect at the time of the death of Timothy Halstead must govern the distribution of the property of decedent; that inasmuch as there was not at the time, with respect to separate property, any provision of law comparable to that of section 229 of the Probate Code the decedent took her share of the estate of her former husband as her own property, not subject to a new enactment. There is no merit in the suggestion. █ The descent of property is governed by the law in force at the time of the death of the person whose property is to be distributed. (*McKay* v. *Lauriston,* 204 Cal. 557, 567 [269 Pac. 519].)

█ Equally without merit is the assertion of respondents that the decree of partition intervened to vest in decedent a title to the property different from that received from her deceased husband. It is perfectly plain that title to land is acquired by descent, that partition thereof among the owners has no effect other than segregation of their interests. It does not alter or change the character or status of the property. (*Wade* v. *Deray,* 50 Cal. 376; *Rose* v. *Mesmer,* 142 Cal. 322 [75 Pac. 905] ; *Cunha* v. *Hughes,* 122 Cal. 111 [54 Pac. 535, 68 Am. St. Rep. 27].)

█ The real question in the case has never been precisely decided in this state. We may for the purpose of focusing attention upon the controlling factors phrase it in this way. Did the creation of the joint tenancy and its subsequent termination by the conveyance of the entire estate therein to decedent operate to alter the status of the property or change the origin of the title by which Elizabeth D. Putnam owned the stock at the time of her death? The court below, after reciting the details of the transaction which we have heretofore summarized, found as follows: ''That on January 30, 1931, each of said certificates was transferred and assigned on the back thereof by said Elizabeth D. Putnam and J. F. Putnam to Mrs. Elizabeth D. Putnam; that said J. F. Putnam signed and delivered the same by his voluntary act, and thereby transmuted and changed the character of said stock held in joint tenancy, with all the characteristics essential

to joint tenancy, into stock no longer held in joint tenancy, but thereafter held in severalty by said Elizabeth D. Putnam; . . . That the said shares of stock are the same nine hundred and eighteen (918) shares of 6 per cent Preferred Stock of said company, which constituted a part of the residue of the estate of said Elizabeth D. Putnam, deceased, described in Finding IX hereof. That said shares of stock did not, nor did any portion thereof, come to said Elizabeth D. Putnam from her predeceased spouse Timothy Halstead by gift, descent, devise, or bequest, but all thereof came to said Elizabeth D. Putnam by the voluntary act of said J. F. Putnam." ■ The reason and purpose of section 229 of the Probate Code is, in the absence of testamentary disposition, to turn the property back to the family from which it came, rather than to permit it to descend to the wife's family. In other words, the section was designed to benefit the natural objects of the bounty of the former owner. (*Estate of McArthur,* 210 Cal. 439 [292 Pac. 469, 72 A. L. R. 1318].) But the section never sought to limit the right of the wife to dispose of it by will or conveyance. For which reasons we find the authorities declaring that property so inherited does not lose its character or status as such by a mere change in form or identity, such, for example, as the exchange of inherited parcel A for parcel B. The latter property acquires the status of that formerly possessed by parcel A. (*Estate of Brady,* 171 Cal. 1 [151 Pac. 275], and cases there cited.) Thus it follows that if when the stock was originally purchased and the joint tenancy created, J. F. Putnam conveyed to his wife property in exchange for his joint tenancy interest, the property so conveyed by him would be subject to distribution under section 229. Also, although the creation of the joint tenancy were without valuable consideration moving to Elizabeth D. Putnam, yet she had effectively removed the property from the status it had formerly held. (*Estate of Brady, supra.*) It is obvious that had the joint tenancy continued until her death, J. F. Putnam would, by reason of his right of survivorship, have owned the property outright. That which is the subject of this contest would have been his, as a matter of right. Hence the reason and purpose of section 229 is not applicable. The equity of the situation warrants the statement that if, in fact, J. F. Putnam voluntarily and without con-

sideration surrendered his joint tenancy interest to Elizabeth D. Putnam, he and his family are those who should benefit by his generosity. Sufficient has been said to demonstrate that the title which Elizabeth D. Putnam acquired upon the termination of the joint tenancy was a new title; that the property was not in fact acquired by her by descent from her predeceased spouse, unless in truth property so acquired by her was conveyed to J. F. Putnam in consideration of his surrender of his interest. But here the finding of the court intervenes to declare against any such contention of the appellant.

By analogy at least the conclusion to which we have come finds support in the following authorities: *Gardner* v. *Collins,* 2 Pet. 58 [7 L. Ed. 347]; *Nesbitt* v. *Trindle,* 64 Ind. 183; *Holme* v. *Shinn,* 62 N. J. Eq. 1 [49 Atl. 151].

A suggestion is advanced that perhaps the joint tenancy was not in fact terminated,—that perhaps there was no contract or understanding between the parties to that effect. The findings of the court upon this question constitute a sufficient answer thereto. The court found that the joint tenancy was terminated and every intendment must be indulged to support it.

The decree of distribution is affirmed.

Preston, J., Langdon, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.