[Civ. No. 16347.  Second Dist., Div. One.  Apr. 30, 1948.]

Estate of LOTTIE C. RUDMAN, Deceased.  GRACE V. RENARD, Respondent, v. HALLIE BREESE, Appellant.

Redmond C. Staats and Redmond C. Staats, Jr., for Appellant.

Ray W. Bruce for Respondent.

BARTLETT, J. pro tem.—This is an appeal from a decree of partial distribution rendered in the estate of Lottie C. Rudman, deceased. Upon the hearing had in connection with the petition for partial distribution and the objections thereto, the parties stipulated as to all of the facts. From that stipulation we learn the following: The property ordered distributed by this decree consisted of cash derived from the sale of real estate described in the inventory on file. This real estate was bought by one Jacob Wickstrom, a widower, on November 8, 1933. He caused the property to be conveyed to himself, his sister Lottie C. Rudman, and his sister's husband, Emil R. L. Rudman, as joint tenants, with the right of survivorship. Of the three joint tenants, Jacob Wickstrom died first, without making any conveyance of his interest in the property; the second to die was Emil R. L. Rudman, who also made no conveyance of his interest. We are concerned here with the estate of Lottie C. Rudman, who also died without having made any distribution of the property by will or conveying any interest in it during her lifetime.

The court ordered the property distributed to the heirs at law of Lottie C. Rudman, of whom the respondent, Grace V. Renard, is one. Hallie Breese, Hanna Heden and Hilda Olsson are nieces and the next of kin of Emil R. L. Rudman. Hallie Breese, who is the appellant herein, holds the interest of the other nieces of Emil R. L. Rudman by assignment. Appellant's contention is that by reason of the provisions of section 229 of the Probate Code the court erred in not distributing one-half of the property to the next of kin of Emil R. L. Rudman.

Section 229 of the Probate Code reads as follows:

"If the decedent leaves neither spouse nor issue, and the

estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation.''

The question then is simply this: By the death of Emil R. L. Rudman and the consequent vesting in Lottie C. Rudman of the entire title to the property, did any of the separate property of her predeceased husband become vested in Lottie C. Rudman?

In considering this matter we must bear in mind that the entire consideration for the property which was in joint tenancy was paid by the brother of Lottie C. Rudman and that being the case, no part of the consideration could have or did come from the deceased husband or his family or the community property of Emil R. L. Rudman and Lottie C. Rudman.

Appellant, in her opening brief, refers to three cases. The first of these is *Estate of Putnam*, 219 Cal. 608 [28 P.2d 27]. That case held that where a decedent had inherited property from a prior husband and from the proceeds of its sale bought corporate stock issued to herself and her present husband in joint tenancy with right of survivorship, and thereafter they conveyed it back to the decedent, section 229 of the Probate Code does not apply to the case, and the stock was properly distributed to the surviving heir of the decedent who died intestate. In the course of its decision the court stated, on page 611.:

''The reason and purpose of Section 229 of the Probate Code is, in the absence of testamentary disposition, to turn the property back to the family from which it came, rather than to permit it to descend to the wife's family. In other words, the section was designed to benefit the natural objects of the bounty of the former owner.''

The partial decree of distribution in this case before us turned the property back to the family from which it came.

The second case to which appellant refers us is *Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873], in which the property which was the subject of the joint tenancy was a bank account created by the deceased and her predeceased husband. The following paragraph of the syllabus sets forth the holding of the court in respect to the question which concerns us here:

"The creation of a joint bank account is a gift *inter vivos*, and under section 229 of the Probate Code, as amended in 1931, the insertion of the word 'gift' in said section, conferred upon the relatives of the predeceased spouse, specified in said section, the right to take as heirs of the surviving spouse such separate property as by the creation of a joint tenancy ownership therein had been given by the predeceased spouse to the surviving spouse."

It differs from the case before us in that none of the separate property of Emil R. L. Rudman went into the creation of the joint tenancy involved.

The third case appellant cites is *Sears* v. *Rule*, 45 Cal.App. 2d 374 [114 P.2d 57], wherein the court stated that under the provisions of section 229 of the Probate Code the property should revert to the predeceased husband "for the reason that it was given to her by her husband in joint tenancy . . ."

In all of these cases the property which became vested in the decedent was separate property of her predeceased husband without doubt. This does not bear on the problem involved here which is: Did any of the separate property of the predeceased husband become vested in Lottie C. Rudman? As the property came to her from the original grant the property was her separate property, and no property came to her as a transferee of her deceased husband. A long line of California decisions so holds. These decisions are all reviewed in a decision of the United States Circuit Court of Appeals of the Ninth Circuit in *Tooley* v. *Commissioner of Internal Revenue*, 121 F.2d 350. In that case the husband died leaving an unpaid income tax of $16,507. During his lifetime he and his wife held property in joint tenancy which terminated on his death. The commissioner attempted to hold this property liable for his income tax, claiming that the widow was a transferee of the property from her husband. After a careful consideration of all the cases on the subject the court makes this flat declaration: "In California the survivor of a joint tenancy holds the full estate by virtue of the original grant

of the joint tenancy and not as a transferee from the deceased co-tenant.''

■ We cannot follow the contention made in appellant's closing brief that to adopt the trial court's interpretation would be to nullify the effect of the 1939 amendment to section 229 of the Probate Code, which added the words, ''or became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent.''

Reading the section as thus amended we see that the qualifying phrase in this section, ''and the estate or any portion thereof was separate property of the deceased spouse,'' still governs. This is well illustrated by *Estate of Taitmeyer*, 60 Cal.App.2d 699 [141 P.2d 504], cited by appellant in his closing brief. In that case property was purchased with community funds and was placed in joint tenancy in the name of the husband and the wife. The husband died and the property vested in the surviving wife, who remarried and subsequently died. The court there held that the property should be distributed to the heirs of the predeceased spouse in accordance with sections 228 and 229 of the Probate Code. At page 711 the court says:

''So far as the facts of this case are concerned, the use of the words 'vested in' in the two sections in question may be treated as surplusage or, if construed, must be interpreted as meaning 'came to' as those words are used in the same sections. When the sections are read together it appears that in amending the act it was the intention to make certain that *all* property (*Estate of Rattray, supra* [13 Cal. 702 (91 P.2d 1042)]) which 'came to' decedent as a gift, by descent, devise or bequest or by right of survivorship in a tenancy or homestead, which had been community property of decedent and a previously deceased spouse (sec. 228) or had been the separate property of the predeceased spouse should go first to the child or children of the deceased spouse and, if none, then as the sections direct.''

Let us consider the decision of the Supreme Court in the *Estate of Abdale*, 28 Cal.2d 587 [170 P.2d 918]. In that case the property was originally separate property of the intestate, he having acquired it before his marriage. Thereafter he placed the property in joint tenancy with his wife and on her death reacquired it as surviving joint tenant. The husband died intestate and the heirs of the wife claimed that half of the property should be distributed to her under the provisions of

section 229 of the Probate Code. The contentions of the parties are set forth in the decision as follows:

"The contestants contend that this section is not applicable and that the estate is distributable to them under section 225 of the Probate Code, on the grounds that the governing principle of sections 228 and 229 is that the origin or source of the property determines its distribution and that the property in question did not have its origin or source as separate property of the predeceased spouse, since it was originally the separate property of the decedent and any interest therein of the predeceased spouse came to her as a gift from the decedent.

"The petitioner contends that even though the property was originally the separate property of the decedent, the predeceased spouse held her interest in the joint tenancy as her separate property, which therefore became vested in the decedent within the meaning of section 229 upon her death."

It will be noted that the petitioner made the same contention in that case that appellant so strenuously urged here, that regardless of the origin of the property in the joint tenancy "the predeceased spouse held her interest in the joint tenancy as her separate property." The court held adversely to the petitioner and in favor of the contestants. This decision and the reasoning of the court in arriving at its decisions should govern here. The court said:

"Petitioner's contention that the character of the property at the time of the death of the predeceased spouse is controlling would render sections 228 and 229 inconsistent with each other. Section 228 applies when '. . . the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent.' (Stats. 1939, p. 2992.) Section 229 likewise applies when '. . . the estate or any portion thereof was separate property of a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent.' The phrase 'was community property' in section 228 necessarily refers to the character of the property before it was placed in joint tenancy. Accordingly, it is held that 'the Legislature intended to ignore the fact that a vested one-half interest as separate property may be created, and viewed the property in its original form as community property.'

(*Estate of Taitmeyer, supra,* 60 Cal.App.2d 699, 703, 711, 712; *Estate of Nielsen,* 65 Cal.App.2d 60, 62 [149 P.2d 737].) Since the two sections must be 'read and construed together' (*Estate of Rattray,* 13 Cal.2d 702, 708 [91 P. 2d 1042]), consistency requires that the phrase 'was separate property' in section 229 also be interpreted as referring to the character of the property before it was placed in joint tenancy. A distribution under section 228 of property that was community property before it was placed in joint tenancy, on the theory that the two spouses are deemed to have contributed equally to its acquisition can find a consistent counterpart in section 229 only if property originally acquired by one of the spouses before it was placed in joint tenancy is distributed in recognition of the fact that this spouse alone contributed to its acquisition.''

In the case of *In re Hobart's Estate,* 82 Cal.App.2d 502 [187 P.2d 105] it is stated that:

''The origin or source of the property determines its distribution (*Estate of Abdale,* 28 Cal.2d 587 [170 P.2d 918]; *Estate of Rattray,* 13 Cal.2d 702 [91 P.2d 1042]; *Estate of Taitmeyer,* 60 Cal.App.2d 699 [141 P.2d 504]) if section 229 is applicable as the basis of the order. . . .''

Such being the case, the trial court in the instance before us made a proper distribution of the property.

The decree of partial distribution is affirmed.

Doran, Acting P. J., and White, J., concurred.