[Civ. No. 49169. First Dist., Div. Three. May 15, 1981.]

Estate of EDGAR GEORGE RILEY, Deceased.
MAURICE ALLEN TOICH, as Successor Administrator, etc.,
Petitioner and Appellant, v.
OLIVE LETA RILEY, Objector and Appellant;
JAMES VINCENT OLM et al., Claimants and Respondents.

COUNSEL

Richard A. Hunter for Petitioner and Appellant.

Richard P. Cotta for Objector and Appellant.

No appearances for Claimants and Respondents.

OPINION

**BARRY-DEAL, J.**—This is an appeal from an order of final distribution rendered in the estate of Edgar George Riley, deceased. Appellant, the mother of decedent, contests the distribution, under Probate Code section 229, of one-half of certain estate assets to the heirs of decedent's predeceased wife.

The facts are undisputed.[1] On September 11, 1957, appellant Olive Leta Riley, a widow, used her separate property to purchase real property in Campbell, California, hereinafter referred to as the "Campbell house." On August 14, 1958, Olive caused the Campbell house to be conveyed to herself, her son decedent Edgar, and Edgar's wife, Dorothy, as joint tenants. Olive paid the entire purchase price of the house. On April 7, 1964, Olive, without consideration, conveyed her interest as joint tenant to decedent Edgar and Dorothy as joint tenants. On August 7, 1970, Dorothy died without having made any conveyance of her interest in the Campbell house, and it vested in decedent Edgar as survivor. On November 17, 1970, decedent Edgar obtained a $15,000 loan secured by the Campbell house. A portion of this $15,000 was used to purchase a 1969 Chrysler automobile, and the remainder was placed in a checking account. On December 18, 1970, decedent Edgar died intestate and without issue, possessed of, inter alia, the Campbell house, the

---

[1]No respondent's brief was filed in this appeal. Pursuant to California Rules of Court, rule 17(b), this court accepts as true appellant's statement of facts.

1969 Chrysler automobile, and the loan proceeds remaining in the checking account, hereinafter collectively referred to as the "Campbell property."[2]

Decedent's sister, Leta May Toich, was appointed administratrix of decedent's estate. A final account and petition for distribution was filed, alleging that the Campbell property should be distributed in its entirety to Olive, decedent's mother. By exception and notice of contest, James Olm and three others, being brother, nieces and nephew of decedent's predeceased spouse Dorothy (hereinafter contestants), claimed that as Dorothy's heirs they were entitled to a proportionate interest in the Campbell property, which was alleged to be her community property.

On July 31, 1972, the trial court (Racanelli, J.) issued its memorandum of preliminary findings and intended interlocutory decision. No judgment was signed, and the parties continued to litigate objections to the accountings. On August 27, 1979, the court (Panelli, J.) ordered that the estate be distributed as set forth in the memorandum of intended decision of July 31, 1972. This order distributed the Campbell property one-half to Olive and one-half to contestants pursuant to Probate Code[3] section 229 as it read at the time of decedent's death on December 18, 1970.[4] In its 1972 intended decision, the court apparently reasoned that Dorothy's interest as joint tenant in the Campbell property had been her separate property and that this portion of decedent's estate was to go to her heirs pursuant to section 229, subdivision (a). Interpreting decedent Edgar's interest as joint tenant to have been "created by gift" from his mother's separate property, the court appeared to rely on section 229, subdivision (b), in distributing this portion of the estate to Olive as surviving donor-parent.

Appellant challenges the trial court's apparent reliance upon section 229, subdivision (a), in awarding a one-half interest in the Campbell property to contestants and contends that either section 229, subdivision

---

[2]During the course of the administration of decedent's estate and prior to the court's final order of distribution, both the Campbell house and the 1969 Chrysler automobile were sold. The sale proceeds retain the same character as the Campbell property. (*Estate of Westerman* (1968) 68 Cal.2d 267, 277-278 [66 Cal.Rptr. 29, 437 P.2d 517].)

[3]All statutory references are to the Probate Code.

[4]In its 1972 order, the trial court (Racanelli, J.) appeared to base its decision on section 229, subdivisions (a) and (b), although this was not expressly stated in either the 1972 memorandum of intended decision or in the 1979 order for final distribution.

(b), as it read at the time of decedent's death, or section 225,[5] mandate a distribution of the property in its entirety to Olive. We agree and hold section 229, subdivision (a), inapplicable under the facts of this case.

Section 229, as amended in 1970·and effective November 23, 1970, provided in pertinent part: "(a) If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was *separate property* of a previously deceased spouse, and...*became vested in the decedent on the death of such spouse by right of survivorship...in a joint tenancy* between such spouse and the decedent, such property goes [to the family of the predeceased spouse]. [¶] (b) If the decedent leaves neither issue nor spouse, that portion of the estate created by *gift*, descent, devise, or bequest from the *separate property of a parent*...shall go to the parent...who made such gift, devise, or bequest ...." (Italics added.)[6] As decedent Edgar died on December 18, 1970, after the effective date of the 1970 amendment, the above provisions of section 229 are applicable in the instant case.

In determining whether the trial court erred in applying section 229, subdivision (a), to order distribution of an undivided one-half interest in the Campbell property to contestants, the ultimate question is whether the interest conveyed to decedent's wife, Dorothy, retained its character as "the separate property of a parent," i.e., Olive, or whether it was transformed into the separate property of the donee·wife. Only under the latter interpretation would contestants be entitled to the challenged portion of the Campbell property.

▆ Section 229 was enacted to further the policy favoring the return of property to the family from which title was derived. (*Estate of Rat-*

---

[5]Section 225 provides: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation." This statute is not specifically directed to questions of a predeceased spouse's possible interest in the decedent's separate property. As section 229, subdivision (b), does encompass such a situation, we shall rely upon it as the basis for our decision.

[6]In 1979, section 229, subdivision (b), which was in effect at the time of decedent Edgar's death, was amended to include the language "Notwithstanding subdivision (a)" and redesignated as subdivision (c). Due to the absence of the "notwithstanding" language in the statute as it stood at the time of decedent's death, it is necessary that we consider both subdivisions (a) and (b) of section 229 in arriving at our conclusion. A search of the cases in this area reveals none that have considered the statute as it stood at the time of decedent Edgar's death.

*tray* (1939) 13 Cal.2d 702, 713-714 [91 P.2d 1042].) "The reason and purpose of section 229 . . . is, in the absence of testamentary disposition, to turn the property back to the family from which it came, rather than to permit it to descend to the wife's family. . . . [T]he section was designed to benefit the natural objects of the bounty of the former owner." (*Estate of Putnam* (1933) 219 Cal. 608, 611 [28 P.2d 27]; *Estate of Westerman, supra*, 68 Cal.2d 267, 271-272.)

In furthering this policy, the Legislature, in sections 228 and 229, furnished a general plan of distribution based upon the underlying fundamental principle that the origin or source of the property should determine its distribution. (*Estate of Westerman, supra*, 68 Cal.2d at pp. 271-272; *Estate of Allie* (1958) 50 Cal.2d 794, 797-798 [329 P.2d 903]; *Estate of Reizian* (1951) 36 Cal.2d 746, 749 [227 P.2d 249]; *Estate of Abdale* (1946) 28 Cal.2d 587, 590-591 [170 P.2d 918].) Where property has been placed in joint tenancy, as was done here, this principle requires that the court look beyond the character of the property immediately preceding its transfer to the surviving spouse, and instead focus on the character of the property before it was placed in joint tenancy. (*Estate of Abdale, supra*, 28 Cal.2d at pp. 591-592.) Where the property involved did not have its origin as separate property of the predeceased spouse, courts have consistently refused to apply section 229, subdivision (a), which would require a distribution of any part thereof to the heirs of the predeceased spouse. (*Id.*, at p. 593; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 79, pp. 5599-5600.)

*Estate of Abdale, supra*, 28 Cal.2d 587, provides a good illustration of this practice. There, husband conveyed his separate property to himself and his wife as joint tenants, and the wife subsequently died, vesting title in the husband as surviving joint tenant. Upon his death, the court traced the origin of the property to the husband and rejected the argument that the wife had acquired a separate property interest for purposes of section 229.[7] Holding that section inapplicable, the court determined that decedent's heirs succeeded to the subject property and the heirs of the predeceased spouse took nothing.

The case at bar differs in that the original source of title derived from a third person, i.e., appellant, rather than from one of the joint tenants themselves. Nevertheless, the case of *Estate of Rudman* (1948)

---

[7]Section 229, subdivision (a), as it applies in the instant case.

85 Cal.App.2d 270 [193 P.2d 39] demonstrates that the same policy and principle considered above are relevant in determining distribution of the property. There, one Jacob Wickstrom conveyed his separate property to himself, his sister, and his sister's husband, as joint tenants. Jacob died first, followed by the husband, with neither of them making any conveyance of their interests in the property. The sister subsequently died intestate, also without conveying any of her interest in the subject property. The court ordered the property distributed to the heirs of the sister. The husband's heirs appealed, and the order was affirmed on appeal.

The *Rudman* court rejected the argument that "the predeceased spouse held [his] interest in the joint tenancy as [his] separate property" for purposes of applying section 229.[8] Using reasoning first applied in *Abdale, supra,* 28 Cal.2d 587, the court determined that utilizing "'the character of the property at the time of the death of the predeceased spouse'" as the controlling factor would render sections 228 and 229 inconsistent with each other. "'Section 228 applies when " . . . the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent." [Citation.] Section 229 likewise applies when " . . . the estate or any portion thereof was separate property of a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent." The phrase "was community property" in section 228 necessarily refers to the character of the property before it was placed in joint tenancy. Accordingly, it is held that "the Legislature intended to ignore the fact that a vested one-half interest as separate property may be created, and viewed the property in its original form as community property." [Citations.] Since the two sections must be "read and construed together" [citation], *consistency requires that the phrase "was separate property" in section 229 also be interpreted as referring to the character of the property before it was placed in joint tenancy.'"* (*Estate of Rudman, supra,* 85 Cal. App.2d at pp. 275-276, italics added; *Estate of Abdale, supra,* 28 Cal. 2d at p. 592.)

■ Thus, in order for heirs of a predeceased spouse to be entitled to any portion of a distribution pursuant to section 229, subdivision (a),

---

[8]Section 229, subdivision (a), as it applies in the instant case.

the property must have been that predeceased spouse's separate property at the time it was placed into joint tenancy. Such is not the case here; at the time the joint tenancy was created, the Campbell house was Olive's separate property.

The *Rudman* court also reasoned that the interest vesting in the surviving spouse upon her husband's death was entirely her own separate property, as it was derived from the original grant made by her brother and not by reason of any transfer accomplished by her deceased husband. (*Estate of Rudman, supra,* 85 Cal.App.2d at pp. 273-274; *Tooley v. Commissioner of Internal Revenue* (9th Cir. 1941) 121 F.2d 350, 354.) This holding is perhaps best explained by *Estate of Gurnsey* (1918) 177 Cal. 211 [170 P. 402], which held that the legal effect of a joint tenancy is not that title to the property passes to the survivor upon the death of his cotenant by descent or otherwise, but that title is instead acquired by the survivor as of the time the joint tenancy was created.

The *Rudman* court concluded that, as the property came to the sister from the original grant made by her brother, it was her separate property. As such, her heirs at law were entitled to a distribution of it in its entirety, and section 229, subdivision (a), was inapplicable. (*Estate of Rudman, supra,* 85 Cal.App.2d at p. 273.)

The substance of section 229 at the time of the *Rudman* decision is embodied in section 229, subdivision (a), as applied in the instant case, and a similar holding is warranted here. The Campbell property was Olive's separate property at the time the joint tenancy was created. Olive being the origin or source of the property, Dorothy did not hold her interest in the joint tenancy as her separate property for purposes of section 229, subdivision (a). The trial court, therefore, erred in applying that section to award contestants that portion of decedent Edgar's estate. Rather, the title to the property which Edgar owned at his death derived in no part from his predeceased spouse Dorothy, but was acquired directly from Olive, his mother. As such, it was his separate property, and a distribution of the entire property pursuant to section 229, subdivision (b), was warranted.

Section 229, subdivision (b), reads: "...that portion of the estate created by gift, descent, devise, or bequest from the separate property of a parent...shall go to the parent...who made such gift...." In accord with the reasoning contained in *Rudman* and *Gurnsey,* Edgar held the Campbell property as his separate property upon Dorothy's death. This

land was conveyed as a gift from the separate property of Edgar's mother, and section 229, subdivision (b), dictates that it must be returned to the parent making such a gift.[9]

■ Despite our holding in the present case, it is important to note that not under all circumstances will property conveyed by a parent to spouses as joint tenants be returned to the parent's family. Section 229 does not limit the right of either joint tenant to dispose of such property by will or conveyance during his or her lifetime. The surviving spouse who is not a member of the family from which title was derived may convey the property to a third person and thereby preclude the return of it to its original source, whether that conveyance is for consideration or by gift. Such action "effectively remove[s] the property from the status it formerly held," and a subsequent reacquisition of the title by means of a new conveyance to the spouse does not restore the property to its former character or status.[10] This is the rule of "new title," first enunciated in *Estate of Putnam, supra*, 219 Cal. 608, and applied in *Estate of Westerman, supra*, 68 Cal.2d 267, to preclude a return of property, subsequently conveyed, to the family from which title originated. In the case at hand, Edgar's predeceased spouse, Dorothy, made no gift or conveyance of her interest in the joint tenancy, and as such, this rule is inapplicable.

As the trial court erred in applying section 229, subdivision (a), the order is reversed and the cause remanded with directions that the Campbell property proceeds be distributed in their entirety to appellant pursuant to Probate Code section 229, subdivision (b).

White, P. J., and Scott, J., concurred.

---

[9]As previously mentioned, the Legislature added the language "Notwithstanding subdivision (a)" to section 229, subdivision (b), and redesignated it subdivision (c) in 1979. This language may indicate an intent by the Legislature to return property given by a parent to a predeceased spouse back to that parent upon the surviving intestate spouse's death without issue or spouse, *regardless of its former character as a joint tenancy.*

[10]However, where the property is not reacquired by the conveying spouse and consideration is received in exchange for the conveyance, such consideration assumes the status of the property conveyed, i.e., the origin or source determines its distribution. (*Estate of Westerman, supra*, 68 Cal.2d at p. 278.)