[Civ. No. 61981. Second Dist., Div. Five. Nov. 16, 1981.]

Estate of PHILLIP LEVINE, Deceased.
MURRAY S. LEVINE, Petitioner and Appellant, v.
ESTELLE LEVINE, Objector and Respondent.

COUNSEL

Joseph W. Fairfield and Robert A. Fairfield for Petitioner and Appellant.

Kenneth S. Wolf for Objector and Respondent.

OPINION

HASTINGS, J.—This case illustrates one of the pitfalls of "how to avoid probate." The appeal concerns a family residence held in joint tenancy although one of the spouses, secretly as it turned out, considered it community property. The court held the property to be joint tenancy and this appeal followed.

Phillip and Estelle Levine were married on January 1, 1974. They had been neighbors for 20 years on Saturn Avenue in Los Angeles, and their respective spouses had predeceased them by several years. Both had children from their prior marriages, all of whom were adults at the time Phillip and Estelle married.

In April of 1975, Phillip and Estelle purchased a home on Lindbrook Avenue in Los Angeles (the Lindbrook home), taking title as joint tenants.

Phillip died on November 26, 1977. His will named as coexecutors his attorney, Samuel Leemon, and his son Murray Levine. Murray filed a petition in the probate court seeking to have the Lindbrook home declared to be community property of Phillip and Estelle. After hearing testimony, the court determined that the home was joint tenancy property, and denied the petition.

At the hearing, Attorney Leemon testified in support of the petition.[1] His testimony was as follows: He and Phillip were cousins and lifelong acquaintances, and he had handled Phillip's legal affairs in recent years. Shortly after he married Estelle in January of 1974, Phillip came to Leemon and asked him to prepare a will. Since Phillip planned to sell his home on Saturn Avenue and purchase a new home with the pro-

---

[1]Although Leemon was a coexecutor of the will, he did not join in the petition or in this appeal.

ceeds, he wanted his will to reflect his intention with respect to the character of the property: the new home was to be considered community property, but would be held in joint tenancy for convenience only. The reason for this was twofold. First, Phillip wanted to be able to devise his one-half of the house to his children, Murray and Iris, which he would be able to do if the home were community property. However, if Estelle predeceased him he also wanted to prevent Estelle from devising her one-half of their community property to her children and wanted to avoid a lengthy probate administration, both of which he could accomplish by holding the property in joint tenancy. Phillip's banker advised him that he could achieve what he wanted by holding the new home in joint tenancy but calling it community property. Leemon advised against this, and told Phillip that unless he had some agreement with Estelle that the home was to be community property, it would be considered joint tenancy property and would pass to Estelle if Phillip predeceased her. Phillip was adamant, however, and said there was no problem because he and Estelle had such an agreement. Accordingly, the will was drafted with the following language:

"FIFTH: I hereby declare that I am selling my home at 9707 Saturn, Los Angeles, California, and will use part of the proceeds of sale to purchase a new home.

"The new home is to be considered community property although of record, for convenience only, the title will be shown and taken in Joint Tenancy."

After Leemon drafted the will, he did not have any further contact with Phillip before the Lindbrook home was purchased, and did not know what agreement, if any, Phillip and Estelle had with regard to the character of the property.

Estelle testified that she never had any discussions with Phillip as to what would happen to their property if one of them died, and Phillip never told her that he wanted his half to go to his children. She never knew Phillip had a will until after he died. When questioned about her knowledge of the meaning of "joint tenancy," she said that she had a joint will with her former husband, they held their home on Saturn Avenue in joint tenancy, and the house passed to her upon his death. She thought that joint tenancy was the only way title to property could be held, and never doubted that she would get the Lindbrook home if Phillip died first.

Estelle also testified that when she and Phillip bought the Lindbrook home, they met with the bank escrow officer and Phillip instructed that the deed should be prepared showing Phillip and Estelle as joint tenants. They had a similar conversation with the real estate broker who handled the sale. She said that Phillip made the down payment and mortgage payments, while she contributed approximately $10,000 towards remodeling the home.

In rebuttal, Murray testified that he had four separate conversations with his father alone in which Phillip told him that Murray and his sister Iris would inherit half the proceeds of the Saturn Avenue house upon Phillip's death.

Based upon the testimony presented at the hearing, the court concluded that, although Phillip intended that the Lindbrook home be considered community property, he never disclosed his intention to Estelle. Accordingly, the court found that the Lindbrook home was joint tenancy property, and denied the petition. ▮ Murray, the appellant, contends that the court's finding was not supported by substantial evidence.

The law on the issue before us is quite clear. ▮ For the purpose of determining the character of real property upon the death of a spouse, there is a rebuttable presumption that the character of the property is as set forth in the deed. (*Schindler* v. *Schindler* (1954) 126 Cal.App.2d 597, 601-602 [272 P.2d 566].) The presumption still applies where the property was purchased with the separate funds of one spouse. (*Gloden* v. *Gloden* (1966) 240 Cal.App.2d 465, 468-469 [49 Cal.Rptr. 659].) The burden is on the party seeking to rebut the presumption to establish that the property is held in some other way; this may be done by a showing that the character of the property was changed or affected by an agreement or common understanding between the spouses. Such agreement may be oral or written, or may be inferred from the conduct and declarations of the spouses. However, there *must* be an agreement of some sort; the presumption may *not* be overcome by testimony about the hidden intention of one spouse, undisclosed to the other spouse at the time of the conveyance. (*Socol* v. *King* (1949) 36 Cal.2d 342, 346 [209 P.2d 577; *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]; *Schindler* v. *Schindler, supra*, at p. 603.) Whether the presumption is rebutted is a question of fact for resolution by the trial court, and we are bound by that court's finding if it is supported by substantial evidence. (*In re Marriage of Wall* (1973)

30 Cal.App.3d 1042, 1046 [106 Cal.Rptr. 690]; *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 742 [145 Cal.Rptr. 205].)

██ The crucial question, therefore, was whether Phillip communicated his intention to Estelle, and whether they had some agreement or understanding that the property would be other than a joint tenancy. Aside from Phillip's statement to his lawyer that "there wouldn't be any problem," the only evidence presented concerning any such agreement was Estelle's testimony that there wasn't one. It was Murray's burden to show that the character of the property was as Phillip intended; absent such an agreement, Murray cannot meet his burden and overcome the presumption created by the deed that the Lindbrook home was joint tenancy property.

Murray contends that the above rule of law unfairly deprives Phillip's children of part of their inheritance.[2] He suggests that we adopt the statutory law applied in marriage dissolution cases where the single family residence acquired during marriage and held in joint tenancy is presumed to be community property. (Civ. Code, § 5110.) This argument, however, should be directed to our Legislature, since it specifically limited the presumption in section 5110 to division of such property in dissolution of marriage or legal separation cases only.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied December 14, 1981, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1982. Kaus, did not participate therein.

---

[2] We can only hope that this harsh result will not eventually materialize. Estelle still retains the power to transfer Phillip's one-half interest to his children by her own testamentary disposition.