ESTATE OF ARTHUR L. HERZOG, DECEASED, MAURICE R. CLARK, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Herzog v. Commissioner
Docket No. 27523-90
United States Tax Court
T.C. Memo 1992-193; 1992 Tax Ct. Memo LEXIS 206; 63 T.C.M. (CCH) 2620; March 31, 1992, Filed *206 An Order and Decision will be entered denying petitioner's motions and rendering decision for respondent. James H. Garrett, for petitioner. June Y. Bass, for respondent. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $ 755,912 in petitioner's Federal estate tax. After a trial in which petitioner contended unsuccessfully that certain real property was community property passing to a qualified terminable interest trust, by various pending motions, petitioner attempts to assert a claim that such property passed to decedent's surviving spouse as joint tenancy property, eligible for the marital exclusion. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. Maurice R. Clark (Clark) is executor of the estate (petitioner) of Arthur L. Herzog, deceased (decedent). At all material times, the executor and decedent were residents of the State of California. Background Chronology
Decedent died on November 13, 1986, survived by his wife, Daisy May Herzog (Mrs. Herzog). Decedent and Mrs. *207 Herzog were married in 1931 and during their marriage resided in the State of California, a community property State. Decedent and Mrs. Herzog had no children. On or about June 1, 1945, a Grant Deed was recorded in the records of the County of San Diego, State of California, by which certain real property (the commercial property) was conveyed to "ARTHUR L. HERZOG AND DAISY MAY HERZOG, husband and wife, as joint tenants". On or about July 1, 1970, a Grant Deed was recorded in the records of San Diego County, reciting that certain real property (the residence) was conveyed to "ARTHUR L. HERZOG and DAISY M. HERZOG, husband and wife as joint tenants". On or about April 7, 1982, decedent was appointed the conservator of the person and estate of Mrs. Herzog. The conservatorship estate, over which decedent was given authority, consisted solely of Mrs. Herzog's separate property, which was the subject of various inventories filed in the conservatorship proceedings. Mrs. Herzog's share of community property was not part of her conservatorship estate. On May 19, 1983, decedent, as conservator of the conservatorship estate of Mrs. Herzog, filed a "Petition to Substitute for Joinder or *208 Consent Requirements: Execution of Lease". In that petition, decedent, represented by counsel, declared under penalty of perjury that: 3. The Petitioner and the Conservatee own community real property, described in Exhibit "A" which is attached hereto and by reference made a part hereof, which is not part of the conservatorship estate under Probate Code Section 3051(b)(2). Said property was vested in joint tenancy for convenience only. See page 3, lines 5-6, of the complaint for divorce instituted by the conservatee in 1950, a copy of which is attached hereto as Exhibit "B," and by reference made a part hereof; and page 2 of Exhibit "C," attached hereto and by reference made a part hereof, which is a copy of an agreement entered into by the Conservator and the Conservatee on December 26, 1950.
Exhibits A, B, and C to the said petition referred to the commercial property and the residential property. The agreement dated December 26, 1950, mentioned in the above-quoted portion of the petition, stated: 4. It is agreed that the parties hereto own as joint tenants certain real property more particularly described in Paragraph V in the complaint filed by wife in the above-mentioned *209 action, and that such real property shall be and remain vested in the parties hereto as joint tenants. 5. It is understood and agreed that all other property of every kind and nature, real and personal, wherever situated, standing of record in the name of the husband and under his custody, possession and control, is and shall remain the community property of the parties.
By order filed June 2, 1983, the Superior Court of the State of California, in and for the County of San Diego, authorized decedent, as conservator, to join in and consent to the lease of the commercial property, reciting, on a form provided by the attorneys for the conservator, "It is to the advantage of the conservatorship estate to enter into the refinancing of the loan on community real property belonging to the Conservator and the Conservatee on the terms and conditions set forth in this order". On or about August 5, 1986, decedent executed a Last Will and Testament in which he devised and bequeathed his entire estate to the Herzog Family Trust under a trust indenture dated August 5, 1986. The Herzog Family Trust indenture recited: ARTHUR L. HERZOG (referred to in this instrument as the "Trustee"), *210 declares that ARTHUR L. HERZOG and DAISY MAY HERZOG (referred to in this instrument as the "Trustors") have transferred and delivered to the Trustee, without consideration, the property described in Schedule A attached to this instrument. [Apparently Schedule A was never prepared; no such schedule has been provided to the Court.] All property subject to these trusts at any time is intended to be community property or separate property of the Trustors, and is sometimes referred to as the "Trust Estate", and shall be held, administered and distributed as provided below. It is the Trustors' intention that all property transferred in trust under this instrument and the proceeds thereof shall continue to retain its character as community or separate property during the joint lifetime of the Trustors, subject, however, to all the terms and conditions of this instrument. ARTICLE I Powers To Amend and Revoke During the lifetime of both Trustors, this trust may be revoked in whole or in part by either Trustor by delivering written notice to the other Trustor and to the Trustee. In the event of such revocation, the entire Trust Estate or the portion affected by the revocation shall revert *211 to both Trustors retaining its prior character as community or separate property. This trust may not be amended during the lifetime of the Trustors without the written agreement of both of them. From and after the death of the predeceased spouse, if the surviving spouse is ARTHUR L. HERZOG, he shall have the power to alter, amend or revoke this Trust in whole or in part, by delivering written notice to the Trustee. If the surviving spouse is DAISY MAY HERZOG, this Trust may not be altered, amended or revoked. * * * ARTICLE III Distribution of Income and Principal
* * * 3. Upon the death of the predeceased Trustor, the Trustee shall distribute $ 150,000.00 to MAURICE R. CLARK and $ 50,000.00 to ROSE DECK and shall divide the remainder of the Trust Estate into two (2) separate trusts designated Trust "A" and Trust "B". (a) Trust "A" shall consist of Two Hundred Thousand and no/100 ($ 200,000.00) Dollars. (b) Trust "B" shall consist of the remainder of the Trust Estate.
* * * 5. The income and principal of Trust "B" shall be held, dealt with and distributed as hereinafter provided: (a) The Trustee, in his sole discretion, shall distribute as much of the net *212 income in quarterly or other convenient installments to the surviving Trustor during his or her lifetime as the Trustee feels he or she may need to maintain the standard of living that the surviving Trustor has become accustomed to. (b) Upon the death of the surviving Trustor the Trustee shall pay out of the Trust Estate the surviving Trustor's last illness and funeral expenses, costs incurred in administering the surviving Trustor's estate, other obligations incurred for the support of the surviving Trustor and any estate and inheritance taxes (including interest and penalties thereon) arising by reason of the surviving Trustor's death. (c) The remaining Trust Estate shall be used solely for charitable purposes and shall be administered as per paragraphs 6 and 7 of this Article.
The trust indenture was executed by decedent for himself and as conservator for Mrs. Herzog. Clark was nominated as executor in the will and as successor trustee of the trust by the documents executed August 5, 1986. Upon the death of the surviving trustor, Clark, and Clark's wife, the trust was to terminate and the corpus to be distributed to a charitable organization designated by the survivor *213 of decedent, Clark, or Clark's wife. By Order for Probate filed January 29, 1987, Clark was appointed executor of the estate of decedent. Also in January 1987, Clark was appointed conservator of the person and estate of Mrs. Herzog. Clark's attorney in the probate proceedings and in the conservatorship proceedings was Philip Altfest (Altfest). In January 1988, a Form 706, United States Estate Tax Return, was filed on behalf of decedent's estate by Clark. Altfest was named as the representative of the estate. On Schedule A -- Real Estate, the residence and the commercial property were listed at a total value of $ 5,105,000 "Less Spouse's 1/2 interest". Nothing was listed on Schedule E -- Jointly Owned Property. On Schedule M -- Bequests, etc., to Surviving Spouse, property was described as a "Qualified terminable interest". In a First Account Current and Report of Conservator and Petition for Allowance of Fees, filed March 8, 1990, Clark, through Altfest as his attorney, alleged that he was accounting for all of the property of the conservatorship. Neither the commercial property nor the residence was listed in the inventory filed in the conservatorship proceeding. In a *214 Petition to Settle Account, Preliminary Distribution and for Partial Allowance of Commissions and Attorneys Fees (dated July 5, 1991) filed in the probate proceedings in the Superior Court of the State of California for the County of San Diego for the estate of decedent, Clark, as executor, represented by Anthony J. Caputo (Caputo), accounted for property of the estate, including a 50-percent interest in the residence and an interest in the commercial property, subject to a mortgage on the commercial property. On or about December 27, 1991, after the procedural matters set forth below had occurred, Clark executed and caused to be recorded in the records of the County of San Diego an Affidavit -- Death of Joint Tenant with respect to the residential property and with respect to the commercial property. Procedural Chronology
In a statutory notice dated September 25, 1990, respondent disallowed petitioner's claimed marital deduction. In the petition filed December 10, 1990, petitioner alleged that the Commissioner erred in determining that the estate of decedent was not qualified for a marital deduction for the value of a qualified terminable interest trust and, further, in determining *215 that petitioner was not entitled to a charitable deduction for the remainder interest left for charitable purposes. The petition was filed by Caputo as attorney for petitioner. By notice served May 23, 1991, the case was set for trial in San Diego, California, on October 28, 1991. In the Standing Pre-Trial Order attached to the Notice Setting Case for Trial, the parties were advised, among other things: Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. It is further ORDERED that unless a basis of settlement has been reached, each party shall prepare a Trial Memorandum substantially in the form attached hereto and shall submit it directly to the undersigned and to the opposing party not less than fifteen (15) days before the first day of the trial session. * * *
The parties were *216 further notified that witnesses not identified in the Trial Memorandum would not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause, and an expert witness' testimony would be excluded for failure to file a written report at least 30 days before the trial and otherwise to comply with the provisions of Rule 143(f). On July 26, 1991, respondent's first request for admissions was served on petitioner. The request for admissions attached copies of the estate tax return, the will of decedent, the Herzog Family Trust indenture, the statutory notice of deficiency, various documents from the probate case, and various documents from the conservatorship proceedings. Petitioner did not respond to respondent's first request for admissions prior to October 1991. On August 1, 1991, respondent's second request for admissions was served on petitioner. Respondent requested that petitioner admit, among other things, that all of decedent's assets as of the date of his death were community property. The balance of the requests for admissions related to use of the conservatorship funds to pay the expenses of Mrs. Herzog. On August 26, 1991, petitioner's *217 response to respondent's second request for admissions was filed. Petitioner expressly admitted that all of decedent's assets as of the date of his death were community property. On September 27, 1991, respondent filed a motion for summary judgment and a memorandum of points and authorities in support of that motion. Respondent's motion asserted that, based upon matters admitted by petitioner, the Herzog Family Trust did not qualify for the marital exclusion. Petitioner was directed to respond to respondent's motion for summary judgment on or before October 18, 1991, and the motion was set for hearing at the call of the calendar for the trial session on October 28, 1991. On October 11, 1991, respondent's Trial Memorandum was served on petitioner. The Trial Memorandum repeated respondent's arguments set forth in the motion for summary judgment and stated: The only issues before the Court are whether the respondent erred in disallowing the claimed marital deduction and in not allowing the petitioner an unclaimed charitable contribution deduction. The petitioner bases its entitlement to said deductions upon the following theories: 1. The trustee of the trust and the surviving *218 wife were, by law, one and the same and that, therefore, the surviving spouse in fact had the unfettered right to all of the income of the residue, unrestricted by any ascertainable standard; and 2. The entire estate, both principal and income, could only inure to the wife or a qualified charitable organization.
Respondent's Trial Memorandum repeated the assertion that all of the property of the estate was community property. Petitioner's Trial Memorandum was filed late and apparently after petitioner's counsel received respondent's Trial Memorandum. Petitioner's Trial Memorandum did not dispute factual statements in respondent's Trial Memorandum and asserted: All of the Decedent's assets as of the date of his death were community property. Daisy May Herzog's share of the community property is not part of her conservatorship estate, said estate being comprised solely of her separate property. Thus, her community property interest is being administered by Maurice Clark, as trustee of the decedent's estate. For convenience purposes, the income generated by both community property interests is being commingled until a final accounting of the estate is done and the *219 probate is closed. Maurice Clark, as conservator of the conservatorship estate of Daisy May Herzog and as the trustee of the Decedent's estate, has the discretion to pay her personal living expenses out of the conservatorship estate, out of the income earned by the assets in the Decedent's estate which are earmarked for the marital share trust, or out of her share of the community property (including her share of any income generated thereby). At all times relevant, Daisy May Herzog's separate property and community property interest have generated sufficient income to pay for a substantial portion of her personal living expenses. The conservatorship estate has expended considerable funds for Daisy May Herzog's support and the estate has also contributed to her support. The accountings for the estate and the conservatorship do not reflect any reimbursement due the conservatorship estate, however no final accounting has been made. At the date of death, the income from the decedent's one-half of the community property was less than the amount needed to maintain the surviving spouse.
Petitioner's Trial Memorandum also stated that petitioner would oppose respondent's motion *220 for summary judgment on the ground that "there are triable issues of fact." Petitioner filed a memorandum in opposition to respondent's motion for summary judgment. Attached to the memorandum was an "affidavit" of Altfest, which stated, in part: A. I was the attorney and financial consultant for the decedent at the time of his death and if called to testify as a witness in this matter could do so competently and from my own personal knowledge. B. I am intimately familiar with the decedent's financial status at the time of his death and prepared the accountings for the Estate. C. Respondent's recital of facts are essentially correct, with the following exceptions and additions: * * * 3. In addition, it should be noted that at the time of decedent's death, one of decedent's main sources of income was an interest in a commercial property [the commercial property] * * * * * * 5. In the drafting of the estate tax return, a net value of $ 864,000 was assigned to decedent's community interest in commercial property for convenience purposes and with the benefit of hindsight. The property was the subject of a lawsuit at the time of decedent's death and the lawsuit was tried *221 and settled (prior to a decision being given) by the estate selling the property to a person who, allegedly had an option to purchase, at a price which resulted in the net value assigned to the asset. At the time of decedent's death, decedent's community interest in the cash flow was only $ 20,000. It was decedent's wish, at the time of his death, to have the estate retain the property unless forced to dispose of it by a court order.
The memorandum in opposition to the motion for summary judgment asserted petitioner's theory that, because the amount needed to maintain decedent's surviving spouse was substantially in excess of the income generated by the estate, all of the income of the estate would be a life interest qualifying for the marital deduction. At the hearing on the motion for summary judgment, petitioner's counsel, Caputo, stated: We believe that in our response to the motion for summary judgment we've raised factual issues that need to be determined. There's a declaration in the file that has to do with the -- what it has to do with is the amounts that were necessary to maintain the surviving spouse who's under a conservatorship in a standard of living, and *222 the question is how much money was available and how much was expended, and those are not admitted and those are in dispute and those go to the heart of the petition or the position of the Petitioner in this matter.
The Court denied respondent's motion for summary judgment without prejudice to respondent's making the same legal arguments after the testimony of petitioner's witnesses was taken. The trial was set for October 30, 1991. At Caputo's request, Altfest sat at the counsel table to assist him during the trial. Clark testified at trial. During his testimony, Caputo asked Clark about his knowledge of decedent's property, including decedent's residence. The following occurred: Q When the petition to settle the account -- that is in the estate -- with the probate court, you characterized in that petition that 50 percent of the residence belonged to the estate. Is that correct? A That's correct. Q All right. And at the time that you made that indication, was that your belief? A Yes. Q And have you since determined that that was not correct? A I have. * * * Q Could you tell me, Mr. Clark, whether or not that was a mistake, when you characterized 50 percent *223 of the house -- the Herzog house -- as belonging to the estate? A It was. * * * Q * * * How did that mistake come about? MS. BASS: Your Honor, I object to this line of questioning because the -- I don't believe the value of the residence or any of the figures in the tax return are at issue, or have been placed at issue. THE COURT: What's the relevance of this line of questioning, Mr. Caputo? MR. CAPUTO: It goes to the amount of income that would be realized from the community property interest in the estate, and this was incorrectly characterized as an asset of the estate and, in fact, where it inured to the surviving spouse under joint tenancy rules, so the figures in the return would not be -- or in the petition, which is an exhibit before the court, would not be correct.
The Court sustained respondent's objection to the testimony and to a copy of a joint tenancy deed relating to the residence because the deed had been shown to respondent only on the date of trial and had not been delivered in accordance with the Standing Pre-Trial Order, and the testimony contradicted the admissions. In view of Caputo's representation as to the relevance of the testimony, the Court *224 explained: THE COURT: Well, I doubt that we're ever going to get to the matter of how much income is available, but I'm letting you make your record. But I'm not going to let the witness come in at this point and cast doubts on the numbers that you've been using all along, and he's been using all along, in terms of whether the assets are community property or separate property. It just isn't fair to try to do this during trial and change the assumptions about the sources of income available. The question, in my mind, is whether the income available is really relevant. You want to prove that. Now, I'm letting you prove it, but not by changing the numbers all the time.
The only reference made during trial by Caputo to the commercial property was an attempt to introduce evidence that the lease income would not be sufficient to support the surviving spouse. All of the testimony offered by petitioner at trial related to petitioner's theory that the estate's marital deduction depended on the amount of income available and the amount of income required to support Mrs. Herzog. There was no suggestion of petitioner's present claim that the estate had no interest in the real *225 property. Various objections to Clark's testimony and to documents offered by petitioner were sustained. At the conclusion of the trial, the Court indicated that it tended to agree with respondent's legal theory but would allow petitioner to file a brief, referring the parties to a recent case contrary to petitioner's position. The Court ordered seriatim briefs, with petitioner's opening brief due January 13, 1992. On December 9, 1991, new counsel entered his appearance for petitioner, and petitioner moved to withdraw Caputo as counsel of record. On January 6, 1992, petitioner filed motions requesting leave to supplement the record (with copies of the joint tenancy deeds relating to the residential property and the commercial property), to withdraw admissions under Rule 90(f), and to amend the pleadings under Rule 41(a) and (b)(2). No motion to be relieved of the stipulation was filed. Petitioner, by the various motions, seeks to repudiate the various admissions and assertions and the stipulation that the real property was community property of decedent and Mrs. Herzog. Further, petitioner seeks to justify the marital deduction on the ground that the real property passed to *226 Mrs. Herzog as the surviving joint tenant. Petitioner's opening brief was filed January 16, 1992. That brief stated that "Petitioner's current counsel recognizes that the issues raised by prior counsel are clearly without merit and refuses to waste the Court's time by making further arguments in support of them." Discussion
Petitioner's concession of the invalidity of the arguments made through the time of trial of this case is well grounded in law and will be accepted. A life estate qualifies for the estate tax marital deduction only if the surviving spouse is entitled to all of the income from the property and no person has a power to appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii). If it is possible that income of the trust will not be available to the surviving spouse, the trust does not qualify for the marital deduction, regardless of the probability that the spouse will enjoy all of the income of the trust. See Estate of Clayton v. Commissioner, 97 T.C. 327, 332-334, 336-337 (1991), on appeal (5th Cir., Feb. 21, 1992); Estate of Ellingson v. Commissioner, 96 T.C. 760, 767-768 (1991), *227 on appeal (9th Cir., Aug. 26, 1991); Estate of Doherty v. Commissioner, 95 T.C. 446, 459-463 (1990), on appeal (10th Cir., Aug. 5, 1991); Estate of Kyle v. Commissioner, 94 T.C. 829 (1990); Estate of Nicholson v. Commissioner, 94 T.C. 666, 674-675 (1990). (We reject petitioner's current contention that the trial held in October 1991 would have been necessary to determine the qualification of the trust for the marital deduction even if only the personal property of the estate passed to the trust.) Petitioner contends that we should accept into evidence grant deeds reciting that the real property was held in joint tenancy form and rule that the value of such property qualifies for the marital deduction. Petitioner argues that respondent is not prejudiced because no evidence could have been or could now be produced that would rebut the presumption of joint tenancy arising from those deeds. Counsel for decedent's estate argues, incongruously, that decedent's 1983 representations that the property was held in joint tenancy form for convenience only should be disregarded because: Clearly, a misrepresentation was made by *228 Mr. Herzog which was not discovered by the Superior Court in the non-adversarial conservatorship proceeding. The other documents in the conservatorship proceeding only continue the misrepresentation made by Mr. Herzog.
Petitioner asserts that, if the Court does not immediately decide the case on the offered evidence in petitioner's favor, the Court should either set a new trial or await State court proceedings in which the character of the property as community property or joint tenancy property will be contested. Petitioner makes these arguments under Rule 41(a) which states "leave shall be given freely when justice so requires." The same standard may be applied to all of the pending motions. See Rules 41(b)(2) and 90(f). See also Rule 91(e). Respondent contends that substantial prejudice will occur if petitioner is allowed to repudiate its prior theory and to adopt a new theory at this time. Respondent asserts that petitioner suggested during July or August 1991 that the real property might be joint tenancy property but failed to pursue the matter. Petitioner's new counsel states that he was first contacted by Clark on September 12, 1991, that respondent's counsel refused *229 to talk to him unless he entered his appearance, that he was too busy to get involved in the matter during October 1991 prior to the trial date, and that Clark contacted him again after the trial and indicated that the trial did not go well. We do not believe that justice favors petitioner's position. First, we are not persuaded by petitioner's legal argument that the claim that the real property was joint tenancy property is meritorious. Under California law, property held by husband and wife in joint tenancy form is subject to a rebuttable presumption that the character of the property is as set forth in the deed. The presumption may be rebutted by evidence that the character of the property was changed or affected by an agreement or common understanding, oral or written, or inferred from the conduct and declarations of the spouses. See Estate of Blair v. Blair, 199 Cal. App. 3d 161, 244 Cal. Rptr. 627 (1988); Estate of Levine v. Levine, 125 Cal. App. 3d 701, 178 Cal. Rptr. 275 (1981); Estate of Wilson, 64 Cal. App. 3d 786, 134 Cal. Rptr. 749 (1976); Chase v. Leiter, 96 Cal. App. 2d 439, 215 P.2d 756 (1950); *230 In re Watkins Estate, 16 Cal. App. 2d 793, 108 P.2d 417 (1940). The 1950 agreement is ambiguous and not conclusive. Under these circumstances, the representative of the estate has asserted and should continue to assert that the estate has a 50-percent interest in the real property. We cannot resolve this issue on the deeds alone. Second, we agree with respondent that, if we were to allow petitioner to raise this claim, discovery would be appropriate. Petitioner contends that such discovery would be futile, because Mrs. Herzog is not competent to testify and respondent could not find any other evidence affecting the nature of the property. As a minimum, respondent would be entitled to inquire of Clark, Altfest, and Caputo as to the reasons for their assertions that the property was community property. Altfest and Clark expressly represented in this proceeding that they were familiar with decedent's affairs and property prior to his death. Third, the joint tenancy deeds do not in any sense qualify as "newly discovered evidence." The deeds were matters of record, and, if the executor and his counsel were unaware of their existence, they should *231 have been aware of their existence. Copies were in the public record in the conservatorship proceedings; Clark was the conservator, and Caputo acted as his counsel after decedent's death. Petitioner now asserts that respondent's counsel must have been aware of the joint tenancy deeds, but respondent was entitled to rely on the law and the admissions that the property was community property regardless of the title. Petitioner cannot show due diligence, or even effort, to produce the documents in a timely fashion. This Court and others have consistently refused to consider such belatedly tendered evidence without a showing of due diligence. See, e.g., Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989); Morris v. Commissioner, T.C. Memo. 1991-137, on appeal (5th Cir., June 18, 1991); Etter v. Commissioner, T.C. Memo. 1991-43; Haydon v. Commissioner, T.C. Memo. 1991-42, on appeal (4th Cir., May 8, 1991); Pietanza v. Commissioner, T.C. Memo. 1990-524, affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); Baptist v. Commissioner, T.C. Memo. 1990-400; *232 Goldberg v. Commissioner, T.C. Memo. 1989-582; Manzoli v. Commissioner, T.C. Memo. 1989-94, affd. 904 F.2d 101 (1st Cir. 1990). This rule has been applied even in cases, such as Pietanza v. Commissioner, supra, where the newly offered evidence would, if true, unquestionably alter the result. Fourth, the prejudice to the opposing party that must be considered in ruling on a motion to amend pleadings is not measured solely by the possibility that the party could have opposed the claim, and informal notice to the opposing party of a potential claim does not suffice. We repeat here what we said in a similar context in Lewis v. Commissioner, 90 T.C. 1044, 1053 (1988), i.e., "The Court and the public, as well as the parties, are entitled to have cases presented while the evidence can be obtained and presented with clarity and reliability." See also Law v. Commissioner, 84 T.C. 985, 990-993 (1985). We are also entitled to consider prejudice in the form of burdens resulting from the belated raising of claims, including imposition on the time of the Court and of respondent's *233 representatives that could have been devoted to resolutions of disputes involving other taxpayers, even in circumstances where the taxpayers have not had their day in court. See Montgomery v. Commissioner, 367 F.2d 917 (9th Cir. 1966); Lewis v. Commissioner, 90 T.C. at 1051; Brooks v. Commissioner, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Koufman v. Commissioner, 69 T.C. 473, 476-477 (1977). A fortiori, such matters must be considered, in cases such as this, where petitioner has had its day in Court and simply wants to try a different tactic. Fifth, we are not persuaded in this case that it is unfair to hold petitioner to the choice made by prior counsel, even assuming that counsel erred. The alleged error in this case was factual, i.e., title to property held by decedent and Mrs. Herzog. Clark testified that he was familiar with the marital property, and he made various representations about it in the probate proceedings, in the conservatorship proceedings, and in this case, under the guidance of at least two separate counsel. Title *234 to real property is not an obscure matter beyond the understanding of laymen. In any event, for some reason prior to the trial of this case, Clark contacted new counsel. We do not know whether he made any effort to contact counsel other than petitioner's present counsel after petitioner's present counsel declined to become involved at that point. Clark was not kept ignorant of the actions of petitioner's counsel. Even where a party has not had a day in court, the party is bound by the actions of counsel when the lawyer (or the client) makes a tactical decision and adverse results are not the product of inadvertence. Link v. Wabash Ry. Co., 370 U.S. 626, 633 (1962); Smith v. United States, 834 F.2d 166, 170-171 (10th Cir. 1987). See also Adams v. Commissioner, 85 T.C. 359, 371-372 (1985). A fortiori, counsel's actions should bind petitioner here. For all of the foregoing reasons, we conclude that allowing petitioner to raise a new issue inconsistent with that unsuccessfully pursued through trial would impose substantial prejudice on respondent and undue burden on the Court; it would not be consistent with the interests *235 of justice. In view of petitioner's concession with respect to the issue tried, An Order and Decision will be entered denying petitioner's motions and rendering decision for respondent.