[No. B081175. Second Dist., Div. Six. Mar. 28, 1995.]

Estate of JOHN GALLIO, JR., Deceased.
HELEN M. GALLIO, as Executor, etc., Petitioner and Respondent, v.
GLORIA CONIGLIARO et al., Objectors and Appellants.

COUNSEL

Lowthorp, Richards, McMillan, Miller, Conway & Templeman and Patrick T. Loughman for Objectors and Appellants.

Benton, Orr, Duval & Buckingham, Thomas E. Olson and Brenda L. DeHart for Petitioner and Respondent.

OPINION

**YEGAN, J.**—Here we hold that the state constitutional right to privacy (Cal. Const., art. I, § 1) and newly enacted Family Code section 853, subdivision (a) preclude discovery of a living person's will. Gloria Conigliaro and Joanne Pinherio (hereinafter the children) appeal from a judgment that the property of their deceased father, John Gallio, Jr. (father), was not transmuted to community property. The trial court ruled that the children could

not compel the production of Helen M. Gallio's (stepmother's) will and testamentary documents to show an agreement between father and stepmother to transmute property. We affirm.

Father married stepmother in 1949. After the marriage the Gallios constructed a home on stepmother's Santa Paula property. The construction was paid for with a loan and stepmother's money. Over the next 40 years, the couple bought additional property, always taking title in joint tenancy.

In 1967 father executed a will providing that stepmother would receive a life estate in his property. The will stated that his children would share a one-half remainderman interest and that father's stepson, Donald J. Richardson, Jr., would receive the remaining one-half remainderman interest.

In 1985, father changed his will to give each of the children a one-third remainderman interest. The will contained the following recital: "I declare that all property in which I have any interest I hold as community property with my wife HELEN M. GALLIO."

Father died October 4, 1989. Stepmother was appointed executor of the estate and filed a petition to probate the will. The inventory and appraisement listed $3,210 in estate assets. Stepmother claimed that the property held in joint tenancy was not part of the estate.

The children filed a petition to determine title to the property. (Prob. Code, § 9860, subd. (a)(3).) The petition alleged that "[a]ll assets held by decedent and [stepmother] in joint tenancy form were community property assets or assets acquired with community property funds. Decedent and [stepmother] agreed to maintain the community property nature of the assets, which agreement [stepmother] has breached by virtue of her failure to account for the community property interest of [father] in the assets held by them in joint tenancy form at the time of his death."

The children also served a demand for the production and inspection of all wills, codicils, trusts, and testamentary instruments executed by stepmother during her marriage. (Code Civ. Proc., § 2031.) Stepmother objected to the discovery request on privacy grounds. The trial court ruled that production of the documents would violate stepmother's right of privacy. (Cal. Const., art. I, § 1.)

At trial, the children claimed that father's will evidenced an intent to hold the property as community property. The children testified that father had told them that they would be provided for in his will. None of the family

members, however, saw the will. It was stepmother's understanding that the joint tenancy property, including the Santa Paula residence, would go to her if she survived father.

The trial court concluded that there was no agreement to hold the property as community property. The court, in a statement of decision, ruled: "Mrs. Gallio testified that they did not have joint wills nor was she aware of any of the contents of [father's] will. Decedent's daughter's testimony that decedent wanted them to have something, was too vague an interpretation [of the will] to be a transmutation from joint tenancy to community property." This appeal followed.

■ "The law on the issue before us is quite clear. For the purpose of determining the character of real property upon the death of a spouse, there is a rebuttable presumption that the character of the property is as set forth in the deed. [Citation.] . . . The burden is on the party seeking to rebut the presumption to establish that the property is held in some other way; this may be done by a showing that the character of the property was changed or affected by an agreement or common understanding between the spouses. Such agreement may be oral or written, or may be inferred from the conduct and declarations of the spouses. However, there *must* be an agreement of some sort; the presumption may *not* be overcome by testimony about the hidden intention of one spouse, undisclosed to the other spouse at the time of the conveyance. [Citations.]" (*Estate of Levine* (1981) 125 Cal.App.3d 701, 705 [178 Cal.Rptr. 275].)

■ Substantial evidence supports the finding that there was no agreement to transmute property. Absent evidence that stepmother consented to transmutation before father's death, his will did not transmute the property. (E.g., *Estate of Wilson* (1976) 64 Cal.App.3d 786, 798-799 [134 Cal.Rptr. 749].) Here there was no such evidence. Stepmother testified that she and father agreed to "leave everything to each other" and that father "believed that everything should be in joint tenancy."

The children's reliance on *Estate of Jameson* (1949) 93 Cal.App.2d 35 [208 P.2d 54] and *Estate of Watkins* (1940) 16 Cal.2d 793 [108 P.2d 417] is misplaced. In those cases the transmutation was accomplished by joint or mutual wills. Not so here. Stepmother testified that "I went and made my will the way I wanted it, and he went and made his will the way he wanted it. And he didn't know what I did, and I didn't know how he made his." The title to property presumption could not be overcome by evidence that father secretly intended to hold the joint tenancy property as community property. (*Estate of Levine, supra*, 125 Cal.App.3d 701, 705.)

■ Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." The fact that title is ". . . taken in joint tenancy establishes a prima facie case that the property is in fact held in joint tenancy. [Citation.] . . . The form of the deed cannot be lightly disregarded." (*Schindler* v. *Schindler* (1954) 126 Cal.App.2d 597, 601-602 [272 P.2d 566].)

■ The children contend that stepmother's will and testamentary documents were discoverable to show an agreement to transmute property. The trial court correctly ruled that the documents "are protected from discovery based upon the broad right of privacy set forth in the Constitution."

Article I, section 1 of the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safe keeping, happiness and privacy." ■ Our Supreme Court has held that the "[l]egally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633].)

The "informational privacy" protection is qualified and requires that a court balance the right of privacy against the need for discovery. (*Harris* v. *Superior Court* (1992) 3 Cal.App.4th 661, 665 [4 Cal.Rptr.2d 564].) "There must be a compelling and opposing state interest justifying the discovery. [Citation.] Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must be a careful balancing of the compelling public need for discovery against the fundamental right of privacy. [Citation.]" (*Davis* v. *Superior Court* (1992) 7 Cal.App.4th 1008, 1014 [9 Cal.Rptr.2d 331].)

■ The children failed to make a threshold showing that father and stepmother made a joint will, that father and stepmother agreed to hold their property as community property, or that stepmother was even aware of the terms of father's will. The trial court correctly ruled that stepmother's will and estate planning documents were not discoverable.

The children assert that the order denying discovery "is contrary to existing case law" and cite *Estate of Jameson*, *supra*, 93 Cal.App.2d 35 for

the rule that the surviving spouse's will may evidence an agreement to transmute property. However, *Estate of Jameson* is no longer the law. Family Code section 853, subdivision (a), provides that "[a] statement in a will of the character of property is not admissible as evidence of a transmutation of the property in a proceeding commenced before the death of the person who made the will."[1] ■ The rationale for this rule is as follows: "Such testamentary statements are typically made for purposes of tax planning and disposition at death. They are not intended to convey a *present interest* in the property. Further, a will is ambulatory in nature, subject to revocation or modification during the testator's life; it 'speaks' only as of the date of the testator's death. [Citation.]" (Hogoboom & King, Cal. Practice Guide: Family Law 1, (The Rutter Group 1994) ¶ 8:486, p. 8-122.)

■ The trial court properly concluded that stepmother's will and testamentary papers fell within the privacy protection set forth in article I, section 1 of the California Constitution. Discovery in this instance would have been a gross intrusion into stepmother's private affairs. While he was alive, father had no right to ascertain the terms of stepmother's estate plan. Following his death, the children had no greater right to the discovery thereof.

The judgment is affirmed with costs to stepmother.

Stone (S. J.), P. J., and Gilbert, J., concurred.

---

[1] The Law Revision Commission comment states in pertinent part: "Section 853 continues former Civil Code Section 5110.740 without substantive change. When enacted in 1984 (as former Civil Code Section 5110.740), subdivision (a) of this provision reversed the case-law rule that a declaration made in a will as to the character of property may be an effective transmutation of the property before the death of the declarant. See, e.g., *In re Marriage of Lotz*, 120 Cal.App.3d 379, 179 Cal. Rptr. 618 (1981); *Estate of Wilson*, 64 Cal.App.3d 786, 134 Cal. Rptr. 749 (1976)." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (1994 ed.) § 853, p. 335.)